UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES TAYLOR,

        Petitioner,                              Case Number: 12-CV-15624

v.                                             Honorable Patrick J. Duggan

WILLIE SMITH,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, and GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I. INTRODUCTION**

Petitioner James Taylor filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is a state prisoner in the custody of the Michigan Department of Corrections pursuant to a conviction for assault with intent to do great bodily harm less than murder. He argues that his conviction was obtained in violation of his constitutional rights because the trial court improperly declared a mistrial and insufficient evidence was presented to establish his guilt beyond a reasonable doubt. Respondent argues that the claims are meritless. The Court will deny the petition.

**II. BACKGROUND AND PROCEDURAL HISTORY**

Petitioner's convictions arise from events that occurred in Caro, Michigan on

June 25, 2007. On that date, at approximately 11:00 p.m., Abrien Swires drove with his girlfriend, Krysta Essenmacher, to Tonya Johnson's house. When he parked his vehicle in front of Tonya's house, Chandel Goodrich, Petitioner's girlfriend, yelled at him for driving recklessly. Goodrich claimed that Swires almost hit her and her young child. Petitioner then also began yelling at Swires for being disrespectful to Goodrich. Swires testified that he ignored them and entered Tonya Johnson's house. A few minutes later, Petitioner entered Tonya Johnson's house. He yelled at Swires and then approached Goodrich. Petitioner yelled at Goodrich so vehemently that Swires became scared for Goodrich's safety. Swires testified that he warned Petitioner to get away from Goodrich. In response, Petitioner approached Swires. Swires then noticed that Petitioner was carrying a tire iron. Petitioner raised his arm and struck Swires on the head with the tire iron. Petitioner then left the home. Swires was taken to the hospital where he received five staples to close a head wound.

Several witnesses testified that Petitioner used a metal object, possibly a tire iron, to strike Swires. Others testified that Petitioner used only his fist.

Following a jury trial in Tuscola County Circuit Court, Petitioner was convicted of assault with intent to commit great bodily harm less than murder. He was acquitted of a felonious assault charge. On April 10, 2008, Petitioner was sentenced as a fourth habitual offender to 11 to 25 years' imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals. He raised this claim through counsel:

I. Two sentencing-guidelines variables were misscored.

He raised the following claims in a pro per supplemental brief:

I. Did the charges of felonious assault and assault with intent to do great bodily harm less than murder violate the double jeopardy clauses of the United States and Michigan Constitutions where both of the charges arose from a single act and both offenses serve the same societal interests?

II. Did the trial court err in its sua sponte declaration of a mistrial without conducting a manifest necessity hearing and without considering other alternatives or did the trial court err in sua sponte declaring a mistrial where there was no manifest necessity to do so and in any event did the retrial of the Defendant violate the federal and state constitutional prohibitions against double jeopardy?

III. Was it error for Judge Matuzak to take actions in this case when it had been assigned to Judge Josyln or was the Defendant denied a fair trial when Judge Matuzak held the retrial of this matter?

IV. Was there insufficient evidence to justify permitting the jury to consider the offense of assault with intent to do great bodily harm less than murder?

V. Did the trial court err in failing to instruct the jury on the lesser offense of assault and battery?

VI. Was the Defendant denied his constitutional right to a fair trial where the trial court prohibited the Defendant's use of demonstrative evidence?

VII. Is the Defendant entitled to be resentenced based on accurate information?

> VIII. Was the Defendant denied the effective assistance of counsel to which he is guaranteed by the United States and Michigan constitutions?

The Michigan Court of Appeals affirmed Petitioner's conviction and sentence, but remanded for further proceedings on Petitioner's challenges to the accuracy of the presentence information report. People v. Taylor, No. 284983, 2009 WL 3465443, at *5 (Mich. Ct. App. Oct. 27, 2009). The Michigan Court of Appeals did not retain jurisdiction.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. The Michigan Supreme Court vacated Petitioner's sentence and remanded to the trial court for resentencing because the trial court erred in its scoring of offense variable 10. People v. Taylor, 486 Mich. 904 (Mich. Apr. 28, 2010). In all other respects, the Michigan Supreme Court denied leave to appeal.

On June 21, 2010, the trial court resentenced Petitioner to the same term of imprisonment, 11 to 25 years. Petitioner filed an appeal of right to the Michigan Court of Appeals, arguing that offense variable 12 was misscored. The Michigan Court of Appeals vacated the sentence because the trial court erred by scoring OV12 at five points and remanded for resentencing. People v. Taylor, No. 298957, 2011 WL 6757472, at *3 (Mich. Ct. App. Dec. 22, 2011).

On March 5, 2012, the trial court once again resentenced Petitioner to 11 to 25 years' imprisonment. Petitioner filed an appeal of right in the Michigan Court of

Appeals, claiming that the sentencing judge's reasons for exceeding the guidelines were not "substantial and compelling." The Michigan Court of Appeals affirmed his sentence. People v. Taylor, No. 309145, 2013 WL 2627142 (Mich. Ct. App. June 11, 2013). The Michigan Supreme Court denied Petitioner's subsequent application for leave to appeal. People v. Taylor, 495 Mich. 883 (Mich. 2013).

Petitioner then filed the pending habeas petition. He raises these claims:

I. Petitioner was deprived of his Fifth Amendment right to have his trial completed by a particular tribunal when the trial judge failed to exercise sound discretion and abruptly declared a mistrial.

II. The evidence was insufficient to sustain Petitioner's conviction of assault with intent to do great bodily harm less than murder.

### III. LEGAL STANDARD

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16, 124 S. Ct. 7, 10 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520, 123 S. Ct. 2527, 2534-35 (2003) (quoting Williams, 529 U.S. at 413, 120 S. Ct. at 1523). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" Wiggins, 539 U.S. at 520-21, 123 S. Ct. at 2534 (citations omitted); see also Williams, 529 U.S. at 409, 120 S. Ct. at 1521-22. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, —, 131 S. Ct. 770, 786 (2011), (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149

(2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at —, 131 S. Ct. at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. See Williams, 529 U.S. at 412, 120 S. Ct. at 1523. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV. ANALYSIS

### A. Declaration of a Mistrial

Petitioner claims that his right to have his trial completed by a particular tribunal was violated when the trial court declared a mistrial. On the second day of the first trial, the trial court was informed that two jurors believed that the victim in this case spat on them as they were leaving the courthouse for lunch. The victim was questioned by court security and denied spitting on the jurors. The trial court conducted an in chambers discussion with the prosecution and defense, following which the trial court declared a mistrial. The trial court held that the jurors' experience, regardless of its accuracy, rendered a fair trial impossible, and, therefore, found manifest necessity for a mistrial.

The Double Jeopardy Clause of the Fifth Amendment "protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense." U.S. v. Dinitz, 424 U.S. 600, 606, 96 S. Ct. 1075, 1079 (1976).[1] "As

---

[1] The Double Jeopardy Clause is made applicable to the states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 787, 89 S. Ct. 2056, 2059

part of this protection against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant a 'valued right to have his trial completed by a particular tribunal.'" Oregon v. Kennedy, 456 U.S. 667, 671-72, 102 S. Ct. 2083, 2087 (1982) (quoting Wade v. Hunter, 336 U.S. 684, 689, 69 S. Ct. 834, 837 (1949)). But, that "valued right" must sometimes "be subordinated to the public's interest in fair trials designed to end in just judgments." Arizona v. Washington, 434 U.S. 497, 503, n.11, 98 S. Ct. 824, 829 n.11 (1978). Jeopardy attaches when the original jury panel is seated and sworn. Crist v. Bretz, 437 U.S. 28, 38, 98 S. Ct. 2156, 2162 (1978). Once jeopardy attaches, a defendant may not be retried after a mistrial has been declared unless (1) there is a "manifest necessity" for a mistrial, or (2) the defendant either requests or consents to a mistrial. Dinitz, 424 U.S. at 606-07, 96 S. Ct. at 1079.

"Manifest necessity" is a term of art that has come to mean a "high degree" of necessity. The Supreme Court explained:

> The words "manifest necessity" appropriately characterize the magnitude of the prosecutor's burden. . . . Nevertheless, those words do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge. Indeed, it is manifest that the key word "necessity" cannot be interpreted literally; instead, contrary to the teaching of Webster, we assume that there are degrees of necessity and we require a "high degree" before concluding that a mistrial is appropriate.

Washington, 434 U.S. at 505-06, 98 S.Ct. at 830-31. "The decision whether to grant

---

(1969).

a mistrial is reserved to the broad discretion of the trial judge." Renico v. Lett, 559 U.S. 766, 774, 130 S. Ct. 1855, 1863 (2010) (quotation omitted).

In this case, the Michigan Court of Appeals held that the trial court's decision to declare a mistrial was the result of manifest necessity:

> "A trial court should only grant a mistrial when the prejudicial effect of the error cannot be removed in any other way." People v. Horn, 279 Mich. App. 31, 36; 755 N.W.2d 212 (2008). Here, the trial court declared a mistrial because two jurors believed – albeit possibly erroneously – that the victim spit on them during a lunch break. Only twelve jurors were seated at the time, and defendant did not consent to proceeding with fewer than twelve jurors. The trial court did not abuse its discretion in concluding that a mistrial was manifestly necessary because continuing with all twelve jurors would have made an impartial verdict highly unlikely and dismissing the two jurors would violate defendant's right to a jury of twelve jurors pursuant to MCR 6.410(A). See People v. Echavarria, 233 Mich.App. 356, 363; 592 N.W.2d 737 (1999). Although the trial court did not hold an evidentiary hearing, it did hold a hearing, which is all that was required. From the record, it appears that the hearing memorialized discussions held in chambers, and defendant was amenable to the mistrial. See People v. William McGee, 469 Mich. 956; 670 N.W.2d 665 (2003). We find no error.

Taylor, 2009 WL 3465443 at *2.

In assessing whether a manifest necessity existed, "a sliding scale of scrutiny is employed," contingent upon the reasons for the mistrial. Ross v. Petro, 515 F.3d 653, 661 (6th Cir. 2008). "The strictest scrutiny is employed when the mistrial was premised on bad-faith conduct by the judge or prosecutor, and the most relaxed scrutiny is employed when the mistrial was premised on a deadlocked jury." Id.

In this case, Petitioner does not allege that the mistrial was caused by bad-faith conduct of the judge or the prosecutor. The trial court considered the absence of alternate jurors before declaring a mistrial and concluded that there was simply no way to ensure that a fair trial could be had if two sitting jurors believed a key witness had spat upon them. The Michigan Court of Appeals' decision that the trial court reasonably found manifest necessity is supported by the record.

The Sixth Circuit's decision in Walls v. Konteh, 490 F.3d 432 (6th Cir. 2007), further supports this conclusion. In Walls, the Sixth Circuit reversed a district court's order granting habeas relief on double jeopardy grounds. The state trial judge declared a mistrial at the start of the second day of a criminal trial, on September 11, 2001. When the September 11th terrorist attacks began, the jury was excused, the proceedings adjourned, and the courthouse evacuated. Due to confusion caused by the unprecedented attacks and the attendant uncertainty about the immediate future, the trial judge was concerned that jurors would be unable to concentrate and that the parties' right to a fair trial was compromised. After consulting with counsel and despite defense counsel's objection, the trial judge declared a mistrial. The defendant was convicted following a second trial that commenced two months later. The Ohio Court of Appeals upheld the conviction and the Sixth Circuit held that the state court's ruling was not contrary to controlling federal law. The Sixth Circuit reached this

11

holding even after finding that the trial judge did not deliberately explore all available alternatives and the mistrial was not strictly "necessary." The Sixth Circuit concluded that the trial judge was deemed to have exercised "sound discretion" because he did not act irrationally or irresponsibly, he was motivated by genuine concern about the possibility of juror bias, he did not know when the courthouse would reopen, and he considered some alternatives to mistrial. *Id.* at 438-39.

Although the circumstances prompting the decision to declare a mistrial are different here than in Walls, the deference afforded the trial court's well-considered decision is instructive. This Court concludes that the Michigan Court of Appeals' decision in this case properly employed the sliding scale of scrutiny and its conclusion that a mistrial was a manifest necessity is not contrary to, or an unreasonable application of, Supreme Court precedent.

### B. Sufficiency of the Evidence

Next, Petitioner argues that insufficient evidence was presented to convict him of assault with intent to do great bodily harm less than murder.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on

whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) (emphasis in original). "Two layers of deference apply to habeas claims challenging evidentiary sufficiency." McGuire v. Ohio, 619 F.3d 623, 631 (6th Cir. 2010) (citing Brown v. Konteh, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." Brown, 567 F.3d at 205 (citing Jackson, 443 U.S. at 319, 99 S. Ct. at 2789 (emphasis supplied in Brown)). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, "[t]he elements of assault with intent to do great bodily harm less than murder are: '(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder.'" People v. Brown, 267 Mich. App. 141, 147 (2005) (footnote and emphasis omitted) (quoting People v. Parcha, 227 Mich. App. 236, 239 (1997)). The

Michigan Court of Appeals held that sufficient evidence was presented to sustain the conviction, relying on the fact that Petitioner struck Swires in the head with such force that five staples were required to close Swires' head wound. Taylor, 2009 WL 3465443, at *3.

Petitioner argues that the Michigan Court of Appeals' decision was an unreasonable application of Jackson because Petitioner's actions after the assault did not support a finding of guilt. According to Petitioner, Swires testified that he initially felt nothing after being struck with a tire iron and was not knocked down or unconscious. Petitioner argues that, because Swires suffered no obvious immediate injury from the blow and because Petitioner left immediately after striking what appeared to be an ineffectual blow, it is clear that Petitioner did not intend to do great bodily harm to the victim. Otherwise, according to Petitioner's reasoning, Petitioner would have stayed to inflict more substantial injury. The Court is not persuaded by Petitioner's argument. Even if it is possible that a juror may have concluded that Petitioner did not have the requisite intent because he walked away from the confrontation without inflicting more serious injury, such is not the standard under which a sufficiency of the evidence claim is considered on habeas review. A prosecutor is not required "to rule out every hypothesis except that of guilt beyond a reasonable doubt" for the evidence to be sufficient to sustain a conviction. Jackson,

443 U.S. at 307, 99 S. Ct. at 2792-93. It was reasonable for the state court to conclude that, based upon the object with which Petitioner struck the victim and the injury suffered, Petitioner intended to do great bodily harm to Swires. Habeas relief is denied on this claim.

## V. CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 120 S. Ct. 1595, 1063-64 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

However, the Court will grant Petitioner leave to proceed in forma pauperis on appeal.

## VI. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE**. Petitioner is **GRANTED** leave to proceed in forma pauperis on appeal.

        s/PATRICK J. DUGGAN
        UNITED STATES DISTRICT JUDGE

DATE: February 27, 2015

Copies to:
James Taylor
Elizabeth Rivard, A.A.G.
Laura Moody, A.A.G.